Marc Zemel
Knoll D. Lowney
Claire E. Tonry
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) COMPLAINT<br>) |
| PERDUE FOODS LLC dba DRAPER VALLEY FARMS, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Waste Action Project seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Perdue Foods LLC dba Draper Valley Farms' repeated and ongoing violations of Sections 301(a) and 307 of the CWA, 33 U.S.C. §§ 1311(a) and 1317, and the terms and conditions of its CWA pretreatment permit authorizing

COMPLAINT - 1

discharges of pollutants from Defendant's Mount Vernon, Washington, facility to navigable waters via the City of Mount Vernon sewage treatment plant.

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3. Under Section 505 (b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated March 18, 2020 and delivered March 23, 2020 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. Plaintiff notified the Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on March 18, 2020.

4. More than sixty days have passed since the notice letter was served and the violations complained of in the notice letter, identified *infra,* are continuing or are reasonably likely to continue to occur. Defendant is in violation of its pretreatment permit and the CWA. Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5. The source of the violations complained of is located in Skagit County, Washington, within the Western District of Washington, and venue is therefore appropriate in

COMPLAINT - 2

the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.   PARTIES

6. Plaintiff, Waste Action Project, is suing on behalf of itself and its member(s). Waste Action Project is a non-profit corporation registered in the State of Washington. Waste Action Project is a membership organization and has at least one member who is injured by Defendant's violations. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters, and ensuring corporations follow the letter and spirit of environmental laws.

7. Plaintiff has representational standing to bring this action. Waste Action Project's members are reasonably concerned about the effects of excess discharges of oxygen demanding substances and other pollutants from Defendant's facility on aquatic species and wildlife that Plaintiff's members observe and enjoy. Waste Action Project's members are further concerned about the effects of discharges from Defendant's facility on the City of Mount Vernon sewage treatment plant's ability to collect, contain and treat combined sewage and other waste. In addition, excess of oxygen demanding substances from Defendant's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas. As a result, Waste Action Project's members use the Skagit River and the areas near the City of Mount Vernon sewage treatment plant less than they otherwise would.

8. At least one of Plaintiff's members pays taxes and utility and sewer fees which fund the City of Mount Vernon sewer treatment plant. Defendant's discharges impede efficient and affordable operation of the City of Mount Vernon sewer treatment plant, including disposal of sewage sludge, and require additional infrastructure at the plant than would otherwise be

necessary, thereby wasting Plaintiff's members' money and diverting funds from other pollution reduction efforts at the sewage treatment plant.

9. The recreational, economic, aesthetic and/or health interests of Waste Action Project and its member(s) have been, are being, and will be adversely affected by Defendant's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

10. Plaintiff has organizational standing to bring this action. Plaintiff has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of western Washington. Defendant has failed to fulfill recordkeeping, reporting, maintenance and planning requirements, among others, necessary for compliance with its pretreatment permit and the CWA. As a result, Plaintiff is deprived of information necessary to properly serve its members by providing information and taking appropriate action, and Plaintiff's efforts to educate and advocate for greater environmental protection for the benefit of its members are precluded. Thus, Plaintiff's organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and redressable by the Court.

11. Defendant is a limited liability company authorized to conduct business in the State of Washington.

12. Defendant owns and operates a poultry slaughterhouse facility, located at or about 1000 Jason Lane, Mount Vernon, Washington 98273 (the "slaughterhouse" or "facility").

## IV. LEGAL & FACTUAL BACKGROUND

13. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. Section 301(a)

prohibits, inter alia, such discharges not authorized by, or in violation of a pretreatment standard promulgated pursuant to Section 307(b) of the CWA, 33 U.S.C. § 1317(b).

14. The State of Washington has established a federally approved pretreatment program administered by the WDOE. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

15. Pursuant to Section 307(b) of the CWA, 33 U.S.C. § 1317(b), the WDOE has repeatedly issued Defendant the pretreatment permit number ST0003861 (the "Permit"), most recently on August 17, 2016, which became effective on September 1, 2016, and expires on August 31, 2021. The Permit authorizes defendant to discharge process wastewater, stormwater, and other pollutants to the City of Mount Vernon sewage treatment plant subject to certain terms and conditions. The previous iteration of the Permit, effective October 1, 2010 and expired on September 30, 2015, contained substantially similar terms and conditions.

16. The Permit's terms and conditions including numeric effluent limitations, monitoring and sampling of discharges, and reporting and recordkeeping requirements. The Permit requires, among other things, that Defendant properly operate and maintain all systems of treatment and control at all times. The Permit prohibits Defendant from introducing pollutants into the Mount Vernon sewage treatment plant that cause pollutants to pass-through the sewage treatment plant or interfere with the sewage treatment plant operation.

17. Plaintiff filed a complaint on October 23, 2012 against Draper Valley Holdings LLC, then a subsidiary of Defendant, for violations of the Permit at the Facility. *See* W.D. Wash. Case no. 2:12-cv-01870. The Court entered a Consent Decree in that matter on July 24, 2014, which required injunctive relief and a payment for a supplemental environmental benefit

COMPLAINT - 5

project (SEP), among other relief.  That Consent Decree terminated on or about January 24, 2016.  Defendant is once again violating the Permit's pretreatment standards.

18. Discharges from Defendant's slaughterhouse contribute to the polluted conditions of the waters of the State.  The Skagit River is listed on WDOE's 303(d) list of impaired waterbodies for several pollutant parameters, including, pH, and PCBs. Discharges from Defendant's facility, including discharges of oxygen-demanding substances, contribute to the ecological impacts that result from the polluted state of these waters, and to Plaintiff's and its members' injuries resulting there from.

19. The vicinity of the City of Mount Vernon sewage treatment plant and the receiving waters are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including boating, biking, fishing and nature watching.  Plaintiff' member(s) also derive(s) aesthetic benefits from the receiving waters.  Plaintiff's and its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Defendant's contributions to such polluted state.

20. Defendant discharged in excess of the Permit's five-day biological oxygen demand ($BOD_5$) limit of 1430 pounds per day during the monitoring periods identified in Table 1:

[Space Intentionally Blank]

COMPLAINT - 6

Table 1: BOD₅ Discharge Violations

| | Dates of Violation | BOD$_5$ consecutive three-day average, pounds per day<br><br>(Limit = 1,430 pounds per day, maximum consecutive three-day average) |
|---|---|---|
| 1 | 3/18/20 – 3/20/20 | **1,575.33 lbs/day** |
| 2 | 3/17/20 – 3/19/20 | **1,597** |
| 3 | 3/10/20 – 3/12/20 | **1,436.33** |
| 4 | 3/4/20 – 3/6/20 | **1,444.33** |
| 5 | 2/27/20 – 2/29/20 | **1,455.67** |
| 6 | 2/26/20 – 2/28/20 | **1,469.33** |
| 7 | 2/19/20 – 2/21/20 | **1,497.67** |
| 8 | 2/18/20 – 2/20/20 | **1,501** |
| 9 | 2/11/20 – 2/13/20 | **1,467,667** |
| 10 | 2/4/20 – 2/6/20 | **1,451.67** |
| 11 | 1/28/20 – 1/30/20 | **1,456.67** |
| 12 | 1/7/20 – 1/9/20 | **1,551.33** |
| 13 | 1/3/20 – 1/5/20 | **1,533.67** |
| 14 | 1/1/20 – 1/3/20 | **1,456.33** |
| 15 | 12/19/19 – 12/21/19 | **1,439.67** |
| 16 | 12/18/19 – 12/20/19 | **1,682.33** |
| 17 | 12/17/19 – 12/19/19 | **1,509.67** |
| 18 | 12/11/19 – 12/13/19 | **1,451.67** |
| 19 | 12/10/19 – 12/12/19 | **1,716** |
| 20 | 12/5/19 – 12/7/19 | **1,591.67** |
| 21 | 12/4/19 – 12/6/19 | **1,950.33** |

COMPLAINT - 7

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

| 22 | 12/3/19 – 12/5/19 | **2,162.67** |
|---|---|---|
| 23 | 12/2/19 – 12/4/19 | **1,599.67** |
| 24 | 11/26/19 – 11/28/19 | **1,786.33** |
| 25 | 11/25/19 – 11/27/19 | **1,435** |
| 26 | 11/20/19 – 11/22/19 | **1,735.33** |
| 27 | 11/19/19 – 11/21/19 | **1,664.33** |
| 28 | 11/14/19 – 11/15/19 | **1,488.33** |
| 29 | 11/13/19 – 11/15/19 | **1,545.67** |
| 30 | 11/12/19 – 11/14/19 | **1,479.33** |
| 31 | 10/30/19 – 11/1/19 | **1,459.67** |
| 32 | 9/19/19 – 9/21/19 | **1,444.67** |
| 33 | 9/18/19 – 9/20/19 | **1,608** |
| 34 | 9/17/19 – 9/19/19 | **1,448** |
| 35 | 9/12/19 – 9/14/19 | **1,480** |
| 36 | 9/11/19 – 9/13/19 | **1,467.67** |
| 37 | 9/4/19 – 9/6/19 | **1,564.67** |
| 38 | 8/27/19 – 8/29/19 | **1,498.67** |
| 39 | 8/22/19 – 8/24/19 | **1,565,67** |
| 40 | 8/21/19 – 8/23/19 | **1,686.67** |
| 41 | 8/20/19 – 8/22/19 | **1,638.33** |
| 42 | 8/15/19 – 8/17/19 | **1,434** |
| 43 | 8/14/19 – 8/16/19 | **1,563.67** |
| 44 | 8/13/19 – 8/15/19 | **1,490** |
| 45 | 8/6/19 – 8/8/19 | **1,605** |
| 46 | 7/31/19 – 8/2/19 | **1,454.33** |
| 47 | 7/30/19 - 8/1/19 | **1,458.33** |
| 48 | 7/10/19 – 7/12/19 | **1,479.33** |
| 49 | 6/27/19 – 6/29/19 | **1,847,67** |

| 50 | 6/26/19 – 6/28/19 | **2,051.67** |
|---|---|---|
| 51 | 6/25/19 – 6/27/19 | **2,015.33** |
| 52 | 6/12/19 – 6/14/19 | **1,514** |
| 53 | 6/11/19 – 6/13/19 | **1,515.33** |
| 54 | 5/21/19 – 5/23/19 | **1,449.33** |
| 55 | 4/17/19 - 4/19/19 | **1,480** |
| 56 | 4/16/19 – 4/18/19 | **1,707.33** |

21. Defendant is in violation of the Permit's requirements to take several actions when Defendant violates or is unable to comply with a Permit condition, including each of the violations identified in Table 1. Defendant has not taken adequate action to stop, contain, and cleanup unauthorized discharges, including and as indicated by the discharges in excess of effluent limits identified in Table 1.

22. Defendant has failed to contact the Department of Ecology by telephone within 24 hours and failed to submit a written report within five days of becoming aware of each violation identified in Table 1, as required by the Permit.

23. Defendant has failed to properly operate its facilities to achieve compliance with the Permit's discharge limits, as required by the Permit.

24. Defendant has failed to properly train its wastewater treatment system operators, failed to properly maintain its wastewater treatment system chemical dosing equipment and pumps, as required by the Permit, and has repeatedly connected slaughterhouse equipment into its wastewater system in a manner that interferes with proper functioning of the treatment system, in violation of the Permit.

25. Defendant has discharged pollutants at concentrations that cause interference with the POTW.

26. Defendant has violated the Permit and Sections 301(a) and 307 of the CWA, 33 U.S.C. §§ 1311(a) and 1317, by discharging pollutants in violation of pretreatment standards.

27. A significant penalty should be imposed against Defendant pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

28. Defendant's violations of the CWA degrade the environment and the water quality of the receiving water bodies.

29. Defendant has benefited economically as a consequence of its CWA violations at the slaughterhouse.

30. Defendant has a history of significant violations similar to those alleged herein, including discharges of excessively polluted wastewater and stormwater, failure to collect and/or submit monitoring information, failure to maintain water pollution control plans, and failure to take timely corrective actions in response to polluted discharges.

31. Defendant's violations were avoidable had Defendant been diligent in overseeing facility operations and maintenance.

32. Defendant is a profitable business enterprise.

33. Given its size and resources, Defendant can afford to pay a significant penalty and such penalty is required to meet the deterrence goals of the CWA's penalty factors.

### V.   CAUSE OF ACTION

34. The preceding paragraphs are incorporated herein.

35. Defendant has violated its CWA pretreatment permit.

36.     Defendant's violations of its Permit described herein and in the Notice Letter constitute violations of sections 301 and 307 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1317, and violations of "effluent standard(s) or limitation(s)" as defined by section 505, 33 U.S.C. § 1365.

37.     The violations committed by Defendant are ongoing or are reasonably likely to continue to occur.  Any and all additional violations of the Permit and the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

38.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the Permit and the CWA to the further injury of Plaintiff, its member(s) and others.

39.     A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VI.     RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.      Issue a declaratory judgment that Defendant has violated and continues to be in violation of the Permit and Sections 301 and 307 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1317;

B.      Enjoin Defendant from operating its facility in a manner that results in further violations of the Permit or the Clean Water Act;

C.      Order Defendant to allow Plaintiff to participate in the development and implementation of a plan to achieve compliance with the Permit and the Clean Water Act;

D.   Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for three years after Defendant achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which Defendant submits to the USEPA or to the WDOE regarding Defendant's coverage under the Permit at the time it is submitted to these authorities;

E.   Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

F.   Order Defendant to pay civil penalties of $55,800.00 per day of violation for each violation committed by Defendant pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

G.   Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

H.   Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 2nd day of June, 2020.

Smith & Lowney, pllc

By: */s/ Marc Zemel*
     Marc Zemel, WSBA No. 44325
By: */s/ Knoll D. Lowney*
     Knoll D. Lowney, WSBA No. 23457
By: */s/ Claire E. Tonry*
     Claire E. Tonry, WSBA No. 44497
Attorneys for Plaintiff
2317 E. John St.
Seattle, WA 98112
Tel: (206) 860-2883
Fax: (206) 860-4187
E-mail: marc@smithandlowney.com, knoll@smithandlowney.com,
          claire@smithandlowney.com

COMPLAINT - 12

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

EXHIBIT 1

# Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883, Fax (206) 860-4187

March 18, 2020

**Via Certified Mail - Return Receipt Requested**
Managing Agent
Perdue Foods LLC dba Draper Valley Farms
1000 Jason Lane
Mount Vernon, WA 98273

**Via Certified Mail - Return Receipt Requested**
Managing Agent
Perdue Foods LLC dba Draper Valley Farms
31149 Old Ocean City Rd.
Salisbury, MD 21804

Re:   **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927.  Any response or correspondence related to this matter should be directed to us at the letterhead address.  This letter is to provide you with sixty days notice of Waste Action Project's intent to file a citizen suit against Perdue Foods, LLC under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.  This letter is also a request for a copy of the complete and current stormwater pollution prevention plan required by Draper Valley's industrial stormwater general permit for its Mount Vernon facility.

Draper Valley Farms, Inc. ("Draper Valley") has violated and continues to violate the CWA (see sections 301 and 307, 33 USC §§ 1311 and 1317) and its CWA permit number ST0003861 (the "Permit") with respect to operations of, and discharges of wastewater and pollutants to the City of Mt. Vernon sewage treatment plant, and, thereby, to waters of the state, from its slaughterhouse facility located at 1000 Jason Lane, Mount Vernon, Washington 98273 (the "slaughterhouse" or "facility") as described herein.  The Permit was issued by the Washington Department of Ecology on August 17, 2016, became effective on September 1, 2016, and expires on August 31, 2021.

Draper Valley has previously been authorized to discharge wastewater to the Mt. Vernon sewage treatment plant under permits dating back to 1977.  The previous iteration of permit ST0003861 became effective on October 1, 2010, and expired on September 30, 2015. This previous permit included the same or substantially identical requirements as the current permit, so Draper Valley's violations of its previous permit are ongoing.

Notice of Intent to Sue    1

I.   Background

The CWA prohibits the discharge of pollutants to navigable waters unless in compliance with the CWA.  33 USC § 1311.  The CWA regulates three categories of point sources: those that discharge pollutants directly to waters, publicly owned treatment works ("POTW") that treat municipal sewage or industrial wastewater before discharging to navigable waters, and indirect discharges that discharge to a POTW.  Indirect dischargers are regulated under section 307 of the Clean Water Act and are prohibited from discharging pollutants in violation of any effluent standard or prohibition or pretreatment standard.  33 U.S.C. §§ 1317(d), 1311(a).  Where a POTW develops prohibitions or limits on pollutants pursuant to 40 C.F.R. § 403.5(c), such limits are pretreatment standards for the purposes of section 307(d) of the Act.

The Permit authorizes Draper Valley to discharge wastewater to the City of Mount Vernon Publically Owned Treatment Works, which in turn discharges to the Skagit River. The Skagit River is on the Washington Department of Ecology's list of impaired waters because it is water quality limited by fecal coliform, pH, temperature, and PCBs.

II.   Effluent Limitations

Condition S1 of the Permit requires that all discharges must comply with the terms and conditions of the Permit and makes it unlawful for Draper Valley to discharge pollutants more frequently than, or at a concentration in excess of, the discharge limits established in the Permit.

A.   Five-day Biological Oxygen Demand

Condition S1 of the Permit prohibits discharges of five-day biological oxygen demand ($BOD_5$) in excess of 1430 pounds per day (measured by the maximum consecutive three day average).  The previous iteration of the permit established the same effluent limitation. Draper Valley has violated this effluent limitation by repeatedly discharging levels of $BOD_5$ in excess of the limit, as identified in the table below, violations which are likely to recur:

Table 1: $BOD_5$ Discharge Violations

|  | Dates of Violation | $BOD_5$ consecutive three-day average, pounds per day (Limit = 1,430 pounds per day, maximum consecutive three-day average) |
|---|---|---|
| 1 | 1/28/20 – 1/30/20 | **1,456.67 lbs/day** |

| | | |
|---|---|---|
| 2 | 1/7/20 – 1/9/20 | **1,551.33** |
| 3 | 1/3/20 – 1/5/20 | **1,533.67** |
| 4 | 1/1/20 – 1/3/20 | **1,456.33** |
| 5 | 12/19/19 – 12/21/19 | **1,439.67** |
| 6 | 12/18/19 – 12/20/19 | **1,682.33** |
| 7 | 12/17/19 – 12/19/19 | **1,509.67** |
| 8 | 12/11/19 – 12/13/19 | **1,451.67** |
| 9 | 12/10/19 – 12/12/19 | **1,716** |
| 10 | 12/5/19 – 12/7/19 | **1,591.67** |
| 11 | 12/4/19 – 12/6/19 | **1,950.33** |
| 12 | 12/3/19 – 12/5/19 | **2,162.67** |
| 13 | 12/2/19 – 12/4/19 | **1,599.67** |
| 14 | 11/26/19 – 11/28/19 | **1,786.33** |
| 15 | 11/25/19 – 11/27/19 | **1,435** |
| 16 | 11/20/19 – 11/22/19 | **1,735.33** |
| 17 | 11/19/19 – 11/21/19 | **1,664.33** |
| 18 | 11/14/19 – 11/15/19 | **1,488.33** |
| 19 | 11/13/19 – 11/15/19 | **1,545.67** |
| 20 | 11/12/19 – 11/14/19 | **1,479.33** |
| 21 | 10/30/19 – 11/1/19 | **1,459.67** |
| 22 | 9/19/19 – 9/21/19 | **1,444.67** |
| 23 | 9/18/19 – 9/20/19 | **1,608** |
| 24 | 9/17/19 – 9/19/19 | **1,448** |
| 25 | 9/12/19 – 9/14/19 | **1,480** |
| 26 | 9/11/19 – 9/13/19 | **1,467.67** |
| 27 | 9/4/19 – 9/6/19 | **1,564.67** |
| 28 | 8/27/19 – 8/29/19 | **1,498.67** |
| 29 | 8/22/19 – 8/24/19 | **1,565,67** |
| 30 | 8/21/19 – 8/23/19 | **1,686.67** |
| 31 | 8/20/19 – 8/22/19 | **1,638.33** |
| 32 | 8/15/19 – 8/17/19 | **1,434** |
| 33 | 8/14/19 – 8/16/19 | **1,563.67** |
| 34 | 8/13/19 – 8/15/19 | **1,490** |
| 35 | 8/6/19 – 8/8/19 | **1,605** |
| 36 | 7/31/19 – 8/2/19 | **1,454.33** |
| 37 | 7/30/19 - 8/1/19 | **1,458.33** |
| 38 | 7/10/19 – 7/12/19 | **1,479.33** |
| 39 | 6/27/19 – 6/29/19 | **1,847,67** |
| 40 | 6/26/19 – 6/28/19 | **2,051.67** |
| 41 | 6/25/19 – 6/27/19 | **2,015.33** |
| 42 | 6/12/19 – 6/14/19 | **1,514** |
| 43 | 6/11/19 – 6/13/19 | **1,515.33** |
| 44 | 5/21/19 – 5/23/19 | **1,449.33** |
| 45 | 4/17/19 - 4/19/19 | **1,480** |
| 46 | 4/16/19 – 4/18/19 | **1,707.33** |

Draper Valley has a long history of BOD$_5$ discharge violations at the Facility, going back to at least 2008, for which Waste Action Project previously sued Draper Valley in 2012. That prior citizen suit concluded with a Consent Decree in W.D. Wash. case no. 2:12-cv-01870-RSL, which terminated on or about January 20, 2015.  It is inexcusable that Draper Valley is again violating the Permit with persistent BOD$_5$ discharge violations.  Draper Valley has been aware of these more recent BOD$_5$ discharge violations (set forth in Table 1) since at least April 2019, and Draper Valley purported to be working on a solution to mitigate its pollution and comply with the Permit for nearly a year. Yet these violations have continued each and every month since that time and continue to occur.

### III.     Reporting Requirements

A.     Condition S3.E of the Permit requires Draper Valley to take several actions when it violates or is unable to comply with any Permit condition, including immediately taking action to stop, contain, and cleanup unauthorized discharges or otherwise stop the noncompliance and correct the problem.  Draper Valley is in violation of Condition S3.E because Draper Valley has not taken adequate action to stop, contain, and cleanup unauthorized discharges, including and as indicated by the discharges in excess of effluent limits identified in Table 1 of this Notice of Intent to Sue Letter.

B.     Pursuant to condition S3.E.2.b.4 of the Permit, when Draper Valley violates a Permit discharge limit, it must report the violation by telephone to Ecology within 24 hours from the time that Draper Valley becomes aware of the violation.  Condition S3.E.2.c requires Draper Valley to provide a written submission within five days of becoming aware of any occurrence of noncompliance specified in condition S3.E.2, including violations of the maximum discharge limits for BOD$_5$.  Draper Valley is in violation of Condition S3.E.2.b and c because Draper Valley has not contacted Ecology by telephone within 24 hours or submitted a written report within five days of becoming aware of each violation identified in Table 1 of this Notice of Intent to Sue letter.

### IV.     Operation and Maintenance

Condition S4 of the Permit requires Draper Valley, at all times, to properly operate and maintain all facilities or systems of treatment and control which are installed to achieve compliance with the terms and conditions of the Permit.  Draper Valley is in violation of condition S4 of the Permit because Draper Valley has not properly operated its facilities to achieve compliance with the discharge limits, as demonstrated by exceedances identified in Table 1 of this Notice of Intent to Sue Letter.  In addition, and as part of these failures, Draper Valley has not properly trained its wastewater treatment system operators, failed to properly maintain its wastewater treatment system chemical dosing equipment and pumps, and repeatedly connected slaughterhouse equipment into its wastewater system in a manner that interferes with proper functioning of the treatment system.  These violations have occurred during each month identified in Table 1 of this Notice of Intent to Sue Letter, and any preceding period during which Draper Valley should have maintained its facilities and/or trained its employees but failed to do so.

V.   Prohibited discharges

Condition S5.B.3 prohibits Draper Valley from discharging any pollutant, including oxygen-demanding pollutants such as $BOD_5$, at a concentration that will cause interference with the POTW.  Draper Valley violated this condition on each of the days identified in Table 1 of this Notice of Intent to Sue Letter.  In addition to those 3-day averages identified in Table 1, Draper Valley discharged over 2,000 lbs of $BOD_5$ on each of the following days, which are concentrations that cause interference with the POTW: 4/16/19, 4/18/19, 6/26/19. 6/27/19, 8/6/19, 11/26/19, 12/3/19, 12/10/19, 12/20/19, 1/3/20.

VI.   Request for Stormwater Pollution Prevention Plan

In addition to the indirect discharge Permit, Draper Valley's discharges of industrial stormwater to Kulshan Creek are governed by industrial stormwater general permit number WAR000552 ("General Permit").   <u>Pursuant to Condition S9.F. of the General Permit, Waste Action Project hereby requests that Draper Valley  provide a copy of, or access to, its stormwater pollution prevention plan ("SWPPP")</u> complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs.  The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Draper Valley fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the General Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

Conclusion

The above-described violations reflect those indicated by the information currently available to Waste Action Project.  These violations are ongoing.  Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 USC § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $55,800 per day for each violation that occurred since November 2, 2015.  In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this Notice of Intent to Sue sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly

thereafter, to file a citizen suit against Draper Valley under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may begin promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By: *s/Marc Zemel*
    Marc Zemel
    Claire E. Tonry
    Knoll Lowney

cc:    Andrew Wheeler, Administrator, U.S. EPA
       Chris Hladick, Region 10 Administrator, U.S. EPA
       Maia Bellon, Director, Washington Department of Ecology
       CT Corporation System, Registered Agent (711 Capitol Way S, Ste 204, Olympia, WA 98501)