THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

WASTE ACTION PROJECT,

10
                              Plaintiff,

11        v.

12    PERDUE FOODS LLC dba DRAPER
      VALLEY FARMS,

13
                              Defendant.

14

CASE NO. C20-0836-JCC

CONSENT DECREE

15

16        This matter comes before the Court on the parties' joint motion for entry of their

proposed Consent Decree. (Dkt. No. 31.) The United States Department of Justice has filed a

17    notice of no objection, (Dkt. No. 33), and the Environmental Protection Agency has made no

18    timely objection. Having thoroughly considered the joint motion and the relevant record, the

19    Court hereby GRANTS the motion and ENTERS the following consent decree:

20

21                              I.        STIPULATIONS

22        WHEREAS, Plaintiff Waste Action Project ("WAP") filed a complaint against Defendant

Perdue Foods LLC dba Draper Valley Farms ("Draper Valley") on June 2, 2020 and an amended

23    complaint against Draper Valley on February 3, 2021 alleging violations of the Clean Water Act

24    (CWA), 33 U.S.C. § 1251 *et seq*., and the terms and conditions of its coverage under a National

25    Pollutant Discharge Elimination System (NPDES) permit and CWA pretreatment permit

26

authorizing discharges of pollutants from Draper Valley's facility located at 1000 Jason Lane, Mount Vernon, Washington 98273 (the "Facility") to navigable waters via a stormwater system, runoff and via the City of Mount Vernon wastewater treatment plant and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs.

WHEREAS, the parties entered into a stipulation on June 23, 2021 (Dkt. No. 23) confirming Draper Valley violations of the CWA and resolving other legal issues;

WHEREAS, WAP and Draper Valley agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

WHEREAS, WAP and Draper Valley stipulate to the entry of this Consent Decree as indicated below, without trial, adjudication, or admission of any issues of fact or law regarding WAP's claims or allegations set forth in its complaints and its sixty-day notices, other than those admitted by stipulation (Dkt. No. 23) or as expressly provided herein.

STOEL RIVES LLP

By _____
Beth S. Ginsberg, WSBA #18523
Veronica M. Keithley, WSBA #52784
*Attorneys for Defendant*
*Perdue Foods LLC dba Draper Valley*
*Farms*

SMITH & LOWNEY, PLLC

By *s/Marc Zemel*
Marc Zemel, WSBA #44325
Claire E. Tonry, WSBA #44497
Knoll D. Lowney, WCBA #23457
Savannah Rose, WSBA #57062
*Attorneys for Plaintiff*
*Waste Action Project*

PERDUE FOODS LLC DBA DRAPER VALLEY
FARMS

By _____
Herb Frierichs
General Counsel, Perdue Foods, LLC
dba Draper Valley Farms

WASTE ACTION PROJECT

By _____
Greg Wingard
Executive Director of Waste Action Project

CONSENT DECREE
C20-0836-JCC
PAGE - 2

## II.      ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing stipulations of the parties. Having considered the stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.      This Court has jurisdiction over the parties and subject matter of this action.

2.      Each signatory for the parties certifies for that party that they are authorized to enter into the terms and conditions of this Consent Decree and to legally bind the party or parties, their successors in interest and assigns of the parties to it.

3.      This Consent Decree applies to and binds the parties and their successors in interest and assigns.

4.      This Consent Decree and any injunctive relief ordered within applies solely to the operation, oversight, or both by Draper Valley of its facility at or about 1000 Jason Lane, Mount Vernon, Washington 98273 (the "Facility"), which is subject to Industrial Stormwater General Permit number WAR000552 (the "General Permit") and the pretreatment permit number ST0003861 (the "Wastewater Permit" or "Pretreatment Permit") (collectively "the Permits").

5.      This Consent Decree is a full and complete settlement and release of all the claims in the amended complaint and the sixty-day notices and all other claims known or unknown existing as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251–1387, arising from operation of the Facility. Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. Enforcement of this Consent Decree is WAP's exclusive remedy for any violation of its terms. During the term of the Consent Decree, WAP will not support by financial assistance, personnel time, or otherwise,

CONSENT DECREE
C20-0836-JCC
PAGE - 3

other lawsuits or potential lawsuits by WAP's members or other groups or individuals that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251–1387, arising from operation of the Facility.

6.     Unless stipulated by the parties at Dkt. No. 23, this Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by WAP that remain unstipulated or undecided in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of Draper Valley. The parties agree that the obligations undertaken under Paragraphs 7, 8, 9 and 10 are in full and complete satisfaction of all the claims covered by this decree.

7.     Injunctive Relief:

a.   Draper Valley will comply fully with all conditions of the Permits and any successor, modified, or replacement permit or order.

b.   If Draper Valley expands or significantly modifies outdoor operations, it will reevaluate the Facility's stormwater Best Management Practices ("BMPs") with the assistance of a qualified consultant and promptly implement additional recommended BMPs. This includes but is not limited to BMPs for any construction activity. All changes must be summarized in an updated and certified SWPPP, with a copy provided to WAP within 14 days of certification.

c.   Not later than 10 days of filing this Consent Decree with the Court for entry, Draper Valley will inform the Washington Department of Ecology (WDOE) that the parties have reached a settlement pending court approval that will result in Draper Valley requesting that its Biochemical Oxygen Demand ("BOD") limit be amended. Within 10 days after the effective date of this Consent Decree, Draper

Valley will send WDOE a letter signed by a responsible official requesting WDOE to impose the following BOD limits in renewing Draper Valley's Wastewater Permit: (1) a limit of 1,520 pounds per day, measured as a maximum consecutive three-day average, until June 30, 2023; (2) a limit of 1,450 pounds per day, measured as a maximum consecutive three-day average, thereafter. If WDOE reissues Draper Valley's Wastewater Permit before the effective date of this Consent Decree, Draper Valley will take all reasonable measures to modify its Wastewater Permit or otherwise request a modification to the BOD limit to ensure its Wastewater Permit BOD limit does not exceed the limits specified in this paragraph. For the life of this Consent Decree, Draper Valley will not seek any BOD limit increase above those described in this paragraph.

d.  From the effective date of this Consent Decree to June 30, 2023, Draper Valley's wastewater discharge will not exceed 1,520 pounds of BOD per day measured as a maximum consecutive three-day average. From June 30, 2023 through the termination of this Consent Decree, Draper Valley's wastewater discharge will not exceed 1,450 pounds of BOD per day measured as a maximum consecutive three-day average.

e.  By June 30, 2023, Draper Valley will fully implement and have operational a new Moving Bed Biofilm Reactor (MBBR) and new Dissolved Air Flotation (DAF) device engineered and configured to meet the 1,450 pounds per day of $BOD_5$ measured as a maximum consecutive three-day average. Draper Valley further commits to operate and maintain the MBBR and DAF per the manufacturer's specifications.

CONSENT DECREE
C20-0836-JCC
PAGE - 5

      i.   These pretreatment upgrades will include modernized, automated system logic controls.

f.  WAP will have the opportunity to review the MBBR and DAF design documents at the 90% design stage and any subsequent amendments or addenda and provide recommendations for modifications as follows. Draper Valley will use its best efforts to give WAP notice seven days before Draper Valley provides WAP with documents for WAP's review under this subparagraph. Draper Valley will promptly provide WAP with any design documents required by or intended to be submitted to WDOE , including a "90% design document," before Draper Valley submits them to WDOE. Within fifteen (15) days of receipt of a design document or within twenty-one (21) days of receipt if Draper Valley fails to give WAP seven days advance notice, WAP will provide comments and/or recommendations for Draper Valley to consider. During this 15 or 21-day period, Draper Valley will promptly answer WAP's clarifying questions about the document, if any, to facilitate WAP's review. Within fifteen (15) days of receiving any comments or recommendations from WAP, Draper Valley will either adopt WAP's recommendations, address WAP's comments, or explain in detail, in writing, why any of WAP's recommendations or comments were not adopted. After this process is complete, Draper Valley may submit the design document to WDOE for review and must include all of WAP's recommendations or comments that are not incorporated into the document being submitted to WDOE with its submittal to WDOE.

i.   Draper Valley will fund the costs of WAP's expert's review and comment on Draper Valley's MBBR and DAF design documents. Payment will be made within thirty (30) days of receipt of an invoice from WAP and by check payable to Smith & Lowney PLLC's client trust account.

g.   Draper Valley will supplement the existing chemical storage at the Facility by constructing a new chemical storage building that meets industry standards in conjunction with the upgrades described in paragraph 7(e) of this Consent Decree.

h.   After the entry of this Consent Decree, Draper Valley will, on a monthly basis until the requirements in paragraph 7(e) are completed and on a quarterly basis thereafter, electronically forward to WAP copies of all communications to and/or from Ecology related to the pretreatment permit, or wastewater discharges from the Facility.

i.   Draper Valley will be subject to a stipulated payment in lieu of penalty of $12,000 per violation of its Wastewater Permit limits (or the BOD limits contained in subparagraph 7(e), whichever is more stringent) until the MBBR and DAF units described above are fully operational. For each violation thereafter, when upgraded treatment is fully operational, Draper Valley will pay $22,000 per violation of its Wastewater Permit limits for the life of this Consent Decree. Because the BOD and Total Suspended Solids ("TSS") limits are expressed as a consecutive three-day average, stipulated penalties will accrue for those pollutants

only once for each consecutive three-day average that exceeds those limits.[1] Draper Valley will make any stipulated payments in lieu of penalty to EarthCorps and the Rose Foundation, split in equal parts between the recipients, at the addresses provided in paragraph 9 below not later than thirty (30) days after becoming aware of such violation, with a cover letter explaining the payment, with a copy of the letter and check provided to WAP.

8.    WAP agrees to waive its rights and to refrain from appealing Draper Valley's Pretreatment Permit renewal, including but not limited to the forthcoming WDOE re-issued pretreatment permit and the $BOD_5$ permit limits specified in paragraph 7(d) and any and all other limits and conditions of that pretreatment permit .

9.    Payment in Lieu of Penalty:

a.    Within ten (10) days of entry of this Consent Decree, Draper Valley will pay $1,900,000 (ONE MILLION NINE HUNDRED THOUSAND DOLLARS) as follows. Draper Valley will pay $950,000 to EarthCorps and $950,000 to the Rose Foundation for Communities and the Environment for projects to improve the water quality in the Skagit River watershed, including Skagit Bay and the surrounding Puget Sound waters, as described in Revised Exhibits 1 and 2 to this Consent Decree (*See* Dkt. No. 32). Unless the parties mutually agree to wire payments, the check to EarthCorps will be made to the order of EarthCorps, Attention: Catherine Nueva Espana and delivered to: 6310 NE

---

[1] By agreeing to calculate these stipulated penalties for violations of consecutive three-day average limits in this way for settlement purposes, WAP does not concede that such penalties are calculated this way as a matter of law under 33 U.S.C. § 1319(d).

74th Street, Suite 201E, Seattle, WA 98115. The check to the Rose Foundation will be made to the order of and delivered to The Rose Foundation for Communities and the Environment, Attention: Tim Little, 201 4th Street, Suite 102, Oakland, CA 94607. Payments will include the following reference in a cover letter or on the check: "Consent Decree, Waste Action Project v. Perdue Foods LLC dba Draper Valley Farms, W.D. Wash. No. 2:20-cv-00836-JCC." A copy of the checks and cover letters, if any, will be sent simultaneously to WAP and its counsel.

10.    Within ten (10) days of entry of this Consent Decree by the Court, Draper Valley will pay $310,000 (THREE HUNDRED AND TEN THOUSAND DOLLARS) to cover WAP's litigation fees, expenses, and costs (including reasonable attorney and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Marc Zemel. Draper Valley's payment will be in full and complete satisfaction of any claims WAP has or may have, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation.

11.    A force majeure event is any event outside the reasonable control of Draper Valley that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Draper Valley notifies WAP of the event as described in paragraph 12 of this Consent Decree; the steps that Draper Valley will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken

to prevent or minimize any impacts to wastewater or stormwater quality resulting from delay in completing the task.

12.     Draper Valley will notify WAP of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after Draper Valley becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

      a.      Acts of God, war, insurrection, or civil disturbance;

      b.      Earthquakes, landslides, fire, floods;

      c.      Actions or inactions of third parties over which Draper Valley has no control;

      d.      Unusually adverse weather conditions;

      e.      Restraint by court order or order of public authority;

      f.      Strikes;

      g.      Any permit or other approval sought by Draper Valley from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where Draper Valley has timely and in good faith sought the permit or approval;

      h.      Litigation, arbitration, or mediation that causes delay; and

      i.      COVID-19 related delays, including supply chain issues.

13.     This Court retains jurisdiction over this matter while this Consent Decree remains in force. And, while this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to

CONSENT DECREE
C20-0836-JCC
PAGE - 10

enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

14.     The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, WAP will serve copies of it upon the Administrator of the U.S. EPA and the Attorney General.

15.     This Consent Decree will take effect upon entry by this Court. It terminates four (4) years after that date, or upon completion of all obligations imposed by Section 7(e) of this Consent Decree, whichever is later.

16.     Both parties have participated in drafting this Consent Decree.

17.    This Consent Decree constitutes the entire agreement between the parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both parties and the approval of the Court.

18.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

19.    Notifications required by this Consent Decree must be in writing. The sending party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) email. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving party at the one or more addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 20.

**If to Waste Action Project**:

Greg Wingard
Waste Action Project
P.O. Box 9281
Covington, WA 98042
Email: gwingard@earthlink.net


**And to**:

Marc Zemel
Smith & Lowney PLLC
2317 East John St.
Seattle, WA 98112
Email: marc@smithandlowney.com

CONSENT DECREE
C20-0836-JCC
PAGE - 12

**If to Draper Valley:**

Drew Getty
Perdue Foods LLC dba Draper Valley Farms
1000 Jason Lane
Mount Vernon, WA 98273
Email: drew.getty@perdue.com

**And to:**

Beth S. Ginsberg
Veronica M. Keithley
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
Email: beth.ginsberg@stoel.com, veronica.keithley@stoel.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided by e-mail, upon sending to the email address or addresses provided for notice in this Consent Decree.

//

//

//

1

DATED this 14th day of February 2022.

2

3

4

5

6

7
John C. Coughenour
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26